STANDARD AMERICAN DREDGING CO. v. CITY OF OAKLAND.

(Circuit Court of Appeals, Ninth Circuit.   January 5, 1920.)

No. 3336.

CONTRACTS ⬅231(2)—DREDGER ENTITLED UNDER CONTRACT TO HALF COMPEN-
SATION FOR MATERIAL DREDGED BEYOND THE SPECIFIED AREA.

Under a contract providing for the dredging of a channel of specified
width and depth, *held*, that three classes of material were to be subjected
to half measurement and paid for accordingly: First, material dredged
from below specified depths, definitely fixed as in the channel; second,
material dredged from the specified area as marked by the city engineer
beyond the fixed limits of the channel; and, third, the side slopes from
the specified area at the specified rates of flatness.

In Error to the District Court of the United States for the Second
Division of the Northern District of California; Frank H. Rudkin,
Judge.

Action by the Standard American Dredging Company against the
City of Oakland.  Judgment for defendant, and plaintiff brings error.
Affirmed.

Samuel Knight, F. Eldred Boland, and C. Irving Wright, all of San
Francisco, Cal., for plaintiff in error.

H. L. Hagan, City Atty., and John Jewett Earle, Asst. City Atty.,
both of Oakland, Cal., for defendant in error.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge.   This action involves the construction of
certain clauses of a dredging contract between the Dredging Com-
pany, plaintiff in error, and the city of Oakland.  The contract called
for work specified as sections A, B, and C, and the present litigation
arises out of work done within what is called section C, an approach
channel in Oakland harbor.  The specifications required that the ap-
proach channel here involved should be dredged to a depth of 25
feet below low tide, the bottom width to be not less than 300 feet, and
that the cut in the section (C) should be continuous from the south-
easterly end of section B.   "Top widths of said section shall be such
as slopes may assume."   Included in the specifications was the follow-
ing paragraph:

"Material dredged from below the specified depths or from beyond the
specified areas as marked out by the city engineer, and side slopes therefrom at
rates not flatter than one vertical to four horizontal, will be estimated at
half the actual volume of excavation and paid for accordingly: Provided,
however, that no payment will be made for material dredged from below a
depth of one foot below the specified depth, nor from a distance of more
than ten feet beyond said flattest limits of slope for said specified areas to be
dredged.  All material must be removed down to the depths specified over the
whole area to be dredged."

Over 37,000 cubic yards of material were excavated on the side
slopes in the area not flatter than one vertical to four horizontal,
which was estimated at half the actual volume of excavation and paid

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

for accordingly. The Dredging Company contended that it was entitled to full rates, but the District Court found in favor of the defendant city.

The annexed diagram, Figure 1, illustrates the situation, and we use the general explanation of the situation given in another, but similar, case hereinafter cited.

FIGURE I

In the cut a section of vertical plan of the channel is represented. The rectangle A B C D represents the specified area as marked out by the city engineer, having a width of 350 feet and vertical sides of 25 feet in height. By the plan the dredging is to be performed within this area and the material is to be removed therefrom; the side "slopes" being such as the material naturally "assumes" in the course of operations. The lines E B, K B, L B, M B, N B, O D, P D, and F D represent some of the side slopes from the specified area assumed by the material in the course of the dredging operations; B E and F D being lines at the angle of one vertical to four horizontal, the flattest limits for each payment as allowed. The actual side slopes, however, may lie without this limit, and the lines G H, H I, and I J represent the extreme of pay work; that is to say, an excess depth of one foot and an access width on each side of the channel of 10 feet beyond the one by four slope. The line R S is drawn to indicate the actual channel dredged, as was in places the case, beyond the horizontal and vertical limits for which payment could be made.

No dispute arises concerning excavation performed within the area of main channel A B C D. Certain other matters as to payments for material are conceded, so that the question for decision narrows to this: Is payment due for material dredged from the side slopes that is not within the lines E B A C D F upon the basis of full measurement or half measurement of the quantity removed?

In the solution of the matter we have been greatly aided by the careful and analytical opinion of the District Court of Appeal of California in Standard American Dredging Co. v. City of Oakland, 30 Cal. App. 237, 157 Pac. 833, an action involving the same question upon the same contract and between the same parties as are now herein before the court; the only difference being that the suit in the state court was brought to recover upon a different installment claimed to be due. After discussion of the features of the contract work, the court, through Judge Chipman, said:

"It seems to us that the natural and grammatical construction of the specifications is, as claimed by defendant, and as was held by the lower court, that three classes of material were to be subjected to half measurement and paid for accordingly, namely: '(1) Material dredged from below the specified

depth'; that is, depths that were definitely fixed—as in the channel. '(2) Material dredged from the specified area as marked out by the city engineer': that is, beyond the fixed lines of the channel. '(3) Side slopes therefrom (from the specified area) at rates not flatter than one vertical to four horizontal, with a proviso that no payment would be made for material dredged beyond certain vertical and horizontal lines.' That is, the phrase, 'will be estimated at half the actual volume of excavation,' is qualified by what precedes it and relates to dredging 'below specified depths,' to dredging 'from beyond the specified areas,' and to 'side slopes therefrom [from the specified area] at rates not flatter than one vertical to four horizontal.' And the limiting clause which follows seems to confirm this view, for it expressly provides 'that no payment will be made for material dredged from a depth of one foot below the specified depth nor from a distance of more than 10 feet beyond said flattest limits of slope for said specified areas to be dredged.' The parties understood that side slopes were inevitable, and dredging to some extent below specified depths, for the exact depth could not always be maintained, and so a limit as to depth beyond which no payment would be made was provided for. and a one-half rate was fixed for dredging on slopes not flatter than one to four, and no payment would be made for material dredged 'from a distance of more than 10 feet beyond' this slope of one to four. We are unable to accept plaintiff's construction, for by it there would be no material subject to half measurement. except such as was situated beyond the area specified by the city engineer and also beyond 'the side slopes therefrom.' Grammatically, as the specifications are phrased and punctuated, the verb 'will be estimated' had for its subject material 'from beyond the specified depths' and from beyond the specified areas, and, as a further subject, the 'side slopes.' "

The Dredging Company argues that the meaning of the contract and specifications is that the words "specified area" necessarily refer to the area theretofore specified in the specifications, namely, the area included between the bottom width of 350 feet and the top width such as the slopes may assume. They also say that difficulty with respect to the words "specified areas" has arisen from the parenthetical insertion of the words "as marked out by the city engineer" between the words "specified areas" and the words "side slopes therefrom," and they contend that the disjunctive "or" separates the phrase "material dredged from below the specified depths" from the phrase "material dredged from beyond the specified areas," and that the conjunctive "and" conjoins the phrase "material dredged from beyond the specified areas" with the phrase "side slopes therefrom."

We cannot adopt this reasoning. The omission to include the word "beyond" before the words "side slopes" indicates that the parties did not intend to provide that the material subject to half measurement should be only that which was removed from an area lying both beyond the specified areas as marked out by the city engineer and beyond the side slopes therefrom. Without attaching too much importance to the punctuation, it is nevertheless to be observed that there are commas after the word "engineer" and after the word "horizontal." This would indicate that the draftsman of the contract thought it necessary to separate the words "side slopes" from grammatical connection with what immediately preceded it; that is, "beyond the specified areas as marked out by the city engineer." The preposition "beyond" does not govern the words "side slopes," and it is quite clear that the items of work to be estimated at half the volume are "material dredged from below the specified depths or from beyond

the specified areas as marked out by the city engineer," and "side slopes therefrom at rates not flatter than one vertical to four horizontal." Two subjects of the verb "will be estimated" are apparent, namely, "material" and "side slopes"; material being of two classes, one "from below the specified depths" and the other "from beyond the specified areas." If the parties had intended that material between the specified area and the flattest limit of slope was to be measured at full quantity, it would not have been necessary, in designating what material should be measured at half quantity, to refer to material dredged "from beyond the specified area." The use of the conjunctive "and" following the comma placed after the word "engineer" was to join the two subjects of the verb "will be estimated," namely, "material" and "side slopes."

The contention that the side slopes were part of the specified area is not well founded, because as pointed out by the opinion of Judge Chipman, the only lines which the city engineer could mark out were the vertical lines of the channel.

We do not think it necessary to elaborate further than to say that, after a careful reading of the opinion of the appellate court of the state, we are satisfied that the construction adopted by that court is in accord with grammatical rules and harmonizes with the evident intent of the parties. The Supreme Court of the state refused to transfer the cause for further hearing after the decision of the appellate court. Under the circumstances this court will adopt the construction put upon the contract by the appellate court, and our judgment will be entered in a way to conform to that made by the state tribunal.

The judgment is affirmed.